**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN TRANSIT INSURANCE COMPANY,<br><br>                                         **Plaintiff,**<br><br>     **-against-**<br><br>21ST CENTURY PHARMACY INC. AND ALBERT ALISHAYEV,<br><br>                                    **Defendants.** | CIVIL ACTION<br><br>22-CV-5255<br><br><br>COMPLAINT<br><br>(TRIAL BY JURY DEMANDED) |

American Transit Insurance Company (interchangeably referred to herein as "Plaintiff" and "American Transit"), by its attorneys Morrison Mahoney, LLP, for its Complaint against Defendants 21st Century Pharmacy Inc. ("21st Century Pharmacy") and Albert Alishayev ("Alishayev") (21st Century Pharmacy and Alishayev are collectively referred to as "Defendants") allege as follows:

## PRELIMINARY STATEMENT

1.    From at least 2014 and continuing through the date of the filing of this Complaint, Defendants engaged in a massive scheme to defraud American Transit, through the exploitation of New York's Comprehensive Motor Vehicle Insurance Reparations Act (popularly known as the "No-fault Law").

2.    Pursuant to the No-fault Law, policyholders and others who suffer in automobile accidents ("Covered Persons") can obtain payments from the policyholders' automobile insurance companies, like American Transit, for necessary medical care ordered by the Covered Persons' physicians. Covered Persons are also permitted to assign those benefits to doctors and other licensed healthcare providers, including pharmacies, enabling them to bill insurance companies directly for their services.

3.      This action seeks to recover more than $335,000.00 that Defendants stole from Plaintiff, and other economic injuries suffered by American Transit, which flowed directly from the submission of hundreds of false and/or fraudulent insurance claims, pursuant to the No-fault Law, seeking reimbursement for pharmaceutical products, including compounded topical pain creams and pain patches.

4.      Compounded medications, such as pain creams, generally consist of the mixing of customized medications tailored to meet the needs of an individual patient who cannot be treated with a Food and Drug Administration (FDA) approved medication.

5.      Compound medications, which are tailored to meet the needs of an individual patient, do not require FDA approval, and as such, may only be prescribed when there is a legitimate medical need specific to an individual patient and in the absence of commercially available medications.

6.      As part of the scheme to defraud alleged herein, the Defendants entered into illegal kickback arrangements with No-fault clinics in the New York metropolitan area (the "Prescribing No-fault Clinics") pursuant to which the No-Fault Clinics prescribed expensive, pre-formulated compounded pain creams produced in bulk by 21st Century Pharmacy to Covered Persons (the "Compound Pain Creams"), rather than commercially available and cheaper over-the-counter and FDA approved medications for no other purpose than to submit fraudulent and inflated bills to American Transit for reimbursement.

7.      In addition to the fraudulent dispensing of Compound Pain Creams, Defendants, as a matter of pattern practice and protocol also dispensed medically unnecessary and expensive topical analgesic patches, which purportedly were used for pain relief (the "Pain Patches"),

notwithstanding that cheaper, over-the-counter, and readily available substitutes were available to Covered Persons.

8.     In furtherance of Defendants' scheme to defraud, Covered Persons who were purportedly involved in automobile accidents would present at the Prescribing No-fault Clinics where they would, as a matter of pattern, practice, and protocol, be prescribed Compound Pain Creams and/or Pain Patches irrespective of medically necessity.

9.     The prescriptions issued by Prescribing No-fault Clinics were done so on a boilerplate, pre-printed prescription form created, and provided to the Prescribing No-fault Clinics, by 21st Century Pharmacy.

10.    The boilerplate, pre-printed prescription forms created by 21st Century Pharmacy contained a selection of more than a dozen pre-formulated Compound Pain Creams and/or Pain Patches from which the Prescribing No-fault Providers could, and did, select, and prescribe to Covered Persons.

11.    Once the Compound Pain Creams and/or Pain Patches were prescribed, they would be dispensed directly to Covered Persons either at the Prescribing No-fault Clinic or would be mailed by 21st Century Pharmacy to the Covered Persons, without the Covered Persons given any choice as to where their prescriptions would be filled.

12.    Defendants purported to provide the Compound Pain Creams and/or Pain Patches to American Transit Covered Persons and sought reimbursement directly from American Transit pursuant to executed "Assignment of Benefit" ("AOB") forms. With regard to the Compound Pain Creams, 21st Century Pharmacy listed each ingredient separately along with the corresponding charge for each, with the total billed amount for Compound Pain Creams ranging as high as thousands of dollars for a single Compound Pain Cream.

13.     Pursuant to Section 5108(c) of the No-fault Law, no provider of health services may demand or request any payment in addition to the charges authorized pursuant to that section.

14.     At all relevant times mentioned herein, nearly each and every bill mailed to Plaintiff by 21st Century Pharmacy sought reimbursement in excess of the amounts authorized by the No-fault Law, to the extent such charges were authorized at all.

15.     On information and belief, by entering into kickback arrangements for Compound Pain Creams and/or Pain Patches with the Prescribing No-fault Clinics and dispensing Compound Pain Creams, irrespective of medically necessity pursuant to bogus prescriptions, 21st Century Pharmacy engaged in conduct which demonstrated a blatant disregard for the laws of New York State, which govern the proper operation of a pharmacy and the proper dispensing of compound drug products, as well as laws which prohibit illegal fee splitting and the solicitation of patients.

16.     By way of example and not limitation, New York Education Law § 6509-a, prohibits a professional licensee, such as a pharmacy, from directly or indirectly requesting, receiving, or participating in the division, transference, assignment, rebate, splitting, or refunding of a fee in connection with professional care or services including services related to drugs and/or medications, and 8 N.Y.C.R.R. § 29.1(b)(3) prohibits a professional licensee, such as a pharmacy from directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.

17.     In addition, the Official Compilation of Codes, Rules and Regulations of the State of New York governing Official Prescriptions, Section 910.2(f), states that "[a]n order purporting to be a prescription that is not issued for legitimate medical purposes is not a prescription within the meaning of the New York State Education Law and the New York State Public Health Law

and the person knowingly dispensing such an order, as well as the person issuing such order, shall be subject to all penalties provided in law or regulations."

18.     By creating and facilitating the use of bogus, boilerplate prescription forms, and dispensing Compound Pain Creams pursuant to such prescriptions, 21st Century Pharmacy also violated (i) New York State Education Law § 6810(7)(a), which provides that "[n]o prescription for a drug written in this state…shall be on a prescription form which authorizes the dispensing or compounding of any other drug, and that [n]o drug shall be dispensed by a pharmacist when such prescription form includes any other drug."

19.     The scheme to defraud orchestrated by the Defendants by which they routinely dispensed formulaic Compound Pain Cream and Pain Patches to Covered Persons without regard to medical necessity, not only demonstrated a deliberate disregard for the laws of New York State in furtherance of theft from American Transit, but also posed a significant risk to the health of such patients.

20.     Even if the Compound Pain Creams and Pain Patches were dispensed by 21st Century Pharmacy pursuant to legitimate prescriptions which they were not, in furtherance of the scheme to defraud alleged herein, 21st Century pharmacy falsely and fraudulently represented in billing submissions to American Transit that it was entitled to reimbursement at grossly inflated amounts well in excess of amounts it would be entitled to pursuant to the relevant fee schedule, exceeded thousands of dollars per patient.

21.     Alishayev through 21st Century Pharmacy, fraudulently submitted, or caused to be submitted, bills to American Transit for Compound Pain Creams and Pain Patches that were provided to Covered Persons (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws

regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and (iv) in violation of Federal regulations regarding the compounding of medications.  By way of example and not limitation, Exhibit "A" in the accompanying Compendium of Exhibits is a spreadsheet listing a representative sample of claims American Transit paid to Defendants for Compound Pain Creams and Pain Patches that were provided (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) in violation of Federal regulations regarding the compounding of medications.

22.     In each instance, Defendants knew or should have known that the claims that they submitted to American Transit were bogus and contained material and misleading statements regarding the propriety of the billed-for services. In particular, Defendants knew or should have known that the claims that they submitted to American Transit were for Compound Pain Products and Pain Patches which were provided: (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) in violation of Federal regulations regarding the compounding of medications.

23.     On information and belief, the Defendants willfully engaged in the practices alleged herein with the sole object of converting money.

24.     In addition to payments resulting from fraudulent claims, the fraudulent activities engaged in by Defendants caused Plaintiff to suffer economic injury, including, but not limited to, expenditures for verifying each fraudulent claim through examinations under oath ("EUOs"),

associated attorneys' and court reporting fees, independent medical examinations ("IMEs"), and peer reviews.

25.     On information and belief, it was a foreseeable consequence of Defendants' scheme to defraud that Plaintiff would incur expenditures in an effort to verify Defendants' fraudulent claims.

26.     At all times relevant herein, but-for Defendants fraudulent misrepresentations, Plaintiff would not have incurred expenditures in an effort to verify Defendants' fraudulent claims.

27.     At all times relevant herein, Defendants fraudulent misrepresentations directly and proximately resulted in Plaintiff incurring expenditures in an effort to verify Defendants' fraudulent claims.

28.     The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeering Influenced and Corrupt Organization Act ("RICO") applies. The Defendants adopted a fraudulent blueprint regarding the dispensing of pharmaceuticals, including but not limited to Compound Pain Creams and Pain Patches, as their business plan, and used it to participate in a systematic pattern of racketeering activity. Every facet of Defendants' operations, from the creation of bogus invoices, to the formation of kickback arrangements with the Prescribing No-fault Clinics, to the illegal bulk manufacturing of Compound Pain Creams, to record keeping to billing, was carried out for the purpose of committing fraud.

29.     This lawsuit seeks to, among other things, enforce the plain language of the No-fault Law and implementing regulations, as well as its underlying public policy, which limits reimbursement of No-fault benefits to legitimate insurance claims for pharmaceutical products.  In doing so, Plaintiff seeks compensatory damages and declaratory relief that Plaintiff is not required

to pay any of 21st Century Pharmacy claims for Compound Pain Creams and Pain Patches submitted to Plaintiff for reimbursement because they were provided (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and (iv) in violation of Federal regulations. By way of example and not limitation, Exhibit "B" in the accompanying Compendium of Exhibits is a spreadsheet listing a representative sample of unpaid No-fault claims, in excess of $720,000.00, that form the basis of Plaintiff's request for declaratory relief. Said spreadsheet is grouped by claim number, date of service and the amount billed.

## STATUTORY/REGULATORY SCHEME

30.     Pursuant to the No-fault Law, Plaintiff is required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of its insured motor vehicles or pedestrians, which arise from the use or operation of such motor vehicles in the State of New York. Covered Persons can also assign these benefits to doctors and other properly licensed healthcare providers, including pharmacies, enabling them to bill insurance companies directly for their services.

31.     As alleged herein, Defendants exploited and continue to exploit the No-fault Law by dispensing Compound Pain Creams and Pain Patches that, if provided at all, were medically unnecessary and provided pursuant to a fraudulent protocol, in which virtually all Covered Persons were prescribed Compound Pain Creams and/or Pain Patches irrespective of need and in violation of state and/or federal law.

32.     On information and belief, 21st Century Pharmacy is ostensibly a licensed pharmacy that bills for pharmaceuticals provided to, among others, individuals covered under the

No-fault Law. In exchange for its services, 21st Century Pharmacy accepted (and continues to accept) assignments of benefits signed by Covered Persons and submitted (and continues to submit) claims for payment to No-fault insurance carriers, in general, and to Plaintiff, in particular.

33.     In accordance with the No-fault Law and 11 N.Y.C.R.R. §§ 65 *et seq.*, 21st Century Pharmacy submitted (and continues to submit) bills for its claims to Plaintiff using the claim form prescribed by the New York State Department of Financial Services ("DFS," f/k/a the Department of Insurance), known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3" (hereinafter "NF-3"), Health Insurance Claim Form 1500 (known as a "HCFA 1500 form"), or a substantially similar form.

34.     Pursuant to Section 403 of the New York State Insurance Law, the NF-3 claim forms submitted to Plaintiff by 21st Century Pharmacy contained the following warning at the foot of the page:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime….

35.     Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiff was (and is) required to promptly process claims within 30 days of receipt of proof of claim.

36.     Section 5108 of the No-fault Law circumscribes the amount that a licensed healthcare provider or other authorized person, such as a pharmacy, may recover for health service related expenses. In particular, under this section, such persons are only entitled to reimbursement of necessary medically related expenses in accordance with the applicable fee schedules

established by the Chairman of the Workers' Compensation Board and adopted by the Superintendent of the DFS.

37.     Pursuant to Ins. Law § 5108, the Superintendent of the DFS adopted, by promulgation of Regulation 83, the Workers' Compensation Board ("WCB") Fee Schedules for determining the maximum permissible reimbursement amounts for which health care providers may charge for services provided to Covered Persons under the No-fault law. 11 N.Y.C.R.R. § 68.1.

38.     Every prescription product, whether a brand name or generic drug, has a designated national drug code ("NDC"), which is a unique 10-digit code that identifies the drug itself, the vendor of the drug and the quantity in which the drug was packaged. Each NDC number has an assigned Average Wholesale Price ("AWP").

39.     Each NDC (and, thus, the AWP) for a particular prescription product differs depending on both the particular supplier the drug is purchased from and the quantity in which the drug is obtained. The same drug can have a different NDC number if it is purchased from a different supplier and/or in different quantities.

40.     The maximum amount that a healthcare provider may charge for a medically necessary prescription drug or product pursuant to the No fault Law is based upon the drug's NDC number. With respect to compounded products, the maximum that a healthcare provider may charge is based on each individual ingredient included in the compounded product and their corresponding NDC numbers and AWPs.

41.     At all relevant times herein, pursuant to 12 N.Y.C.R.R. §§ 440.5(a) and (d) (the "Pharmacy Fee Schedule"), for each brand name drug (or ingredient included in a compounded

product) a provider may charge no more than the AWP assigned to that particular NDC on the day the drug was dispensed minus 12% of the AWP, plus a single dispensing fee of $4.00.

42.    For each generic drug (or ingredient included in a compounded product) the provider may charge no more than the AWP assigned to that particular NDC on the day the drug was dispensed minus 20% of the AWP, plus a single dispensing fee of $5.00.

43.    AWP is defined by 12 N.Y.C.R.R. § 440.2(a) as:

"[t]he average wholesale price of a prescription drug as provided in the most current release of the Red Book published by Thomson Reuters or Medi-Span Master Drug Database by Wolters Kluwer Health or any successor publisher, on the day a prescription drug is dispensed or other nationally recognized drug pricing index adopted by the Chair or Chair's designee."

44.    On information and belief, 21st Century Pharmacy was created for the purpose of participating in the fraudulent billing of insurance companies under the No-fault Law.

45.    On information and belief, every aspect of Defendants' fraudulent scheme was motivated by money, without regard to the grave harm inflicted on the public at large by the Defendants, who, to the extent that they provided any Compound pain Creams at all.

## NATURE OF THE ACTION

46.    This action is brought pursuant to:

i)    The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. § 1962(c);

ii)    New York State Common Law; and

iii)    The Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

## NATURE OF RELIEF SOUGHT

47.    American Transit seeks treble damages that it sustained as a result of the Defendants' schemes and artifices to defraud, and acts of mail fraud (pursuant to 18 U.S.C. § 1341), in connection with their use of the facilities of the No-fault system and its assignment of

benefits mechanism to fraudulently obtain payments from American Transit for pharmaceutical products, including but not limited Compound Pain Creams and Pain Patches that were allegedly dispensed to individuals covered by American Transit under New York State's No-fault Law.

48.     American Transit seeks compensatory and punitive damages under the Common Law.

49.     American Transit further seeks recovery of the No-fault claim payments made under the independent theory of unjust enrichment.

50.     American Transit further seeks a judgment declaring that it is under no obligation to pay any of Defendants' unpaid No-fault claims for Compound Pain Creams and Pain Patches which were dispensed pursuant to the fraudulent scheme set forth herein.

51.     As a result of Defendants' actions alleged herein, American Transit was defrauded of an amount in excess of $335,000.00, the exact amount to be determined at trial, in the form of payments to Defendants and/or expenses incurred by American Transit as a result of Defendants fraudulently billing American Transit for Compound Pain Creams and Pain Patches that they knew or should have known were provided (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and (iv) in violation of Federal regulations

## **THE PARTIES**

52.     Plaintiff American Transit Insurance Company is a corporation duly organized and existing under the laws of the State of New York, having its principal place of business in Brooklyn, New York.

53.     Defendant 21st Century Pharmacy Inc. ("21st Century Pharmacy") was incorporated on or about December 19, 2012, and purports to be a retail pharmacy authorized to do business in the state of New York with a principal place of business located at 9605 57th Avenue, Corona, New York 11368. 21st Century Pharmacy is operated, managed, and/or controlled by Defendant Alishayev and submitted fraudulent claims to Plaintiff seeking reimbursement for pharmaceutical products under the No-fault Law.

54.     Defendant Albert Alishayev ("Alishayev") is a natural person residing in the State of New York, is the principal, officer, and/or director of 21st Century Pharmacy, and, at all times relevant herein, operated, managed, and/or controlled its activities.

## JURISDICTION AND VENUE

55.     The jurisdiction of the Court arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.; 28 U.S.C. §§ 1331; and principles of pendent jurisdiction.

56.     The Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367(a), and the claim for declaratory relief based upon 28 U.S.C. § 2201 and § 2202.

57.     Venue lies in this District Court under the provisions of 28 U.S.C. § 1391, as the Eastern District of New York is the District where one or more the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## FACTUAL BACKGROUND

58.     American Transit underwrites automobile insurance in New York State and participates as an insurer in New York State's No-fault program.

59.     Under the Comprehensive Motor Vehicle Insurance Reparations Act of New York State, Ins. Law §§ 5101, *et seq*., American Transit is required to pay, *inter alia*, for health service expenses that are incurred as a result of injuries suffered by occupants of its insured motor vehicles and pedestrians ("Covered Persons") that arise from the use or operation of such motor vehicles in the State of New York.

60.     On information and belief, the Defendants purportedly dispensed pharmaceutical products to Covered Persons for the purported treatment of neuropathic and/or or musculoskeletal pain and submitted claims for payment to American Transit for such services.

61.     In purported compliance with the No-fault Law and 11 NYCRR 65 et seq., the Defendants submitted proof of their claims to American Transit using the claim form prescribed by the New York State Department of Financial Services ("DFS," f/k/a the Department of Insurance), known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3" (hereinafter "NF-3"), Health Insurance Claim Form 1500 (known as a "HCFA 1500 form"), or a substantially similar form.

62.     On information and belief, pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to American Transit by the Defendants contained the following (or substantially similar) warning on the back of the claim form:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, may be guilty of a criminal act punishable under law and may be subject to civil penalties.

63.     Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, American Transit is required to promptly process claims within 30 days of receipt of the proof of claim.

64.     To fulfill its obligation to promptly process claims, American Transit justifiably relied upon the bills and documentation submitted by Defendants in support of their claims for pharmaceutical products, and paid Defendants based on the representations and information that Defendants submitted to American Transit.

65.     At all relevant times 21st Century Pharmacy was (and continues to be) an illegal enterprise that engaged in systematic and pervasive fraudulent practices.

66.     On information and belief, 21st Century Pharmacy, which is owned, operated, and controlled by Alishayev, was part of a racketeering scheme that distinguished it from a legitimate healthcare provider/pharmacy:

- Unlike legitimate medical providers, 21st Century Pharmacy routinely misrepresented that it was dispensing Compound Pain Creams pursuant to legitimate New York State Prescriptions, when it was not;

- Unlike legitimate medical providers, 21st Century Pharmacy printed its own fraudulent and boilerplate prescription form which it provided to the Prescribing No-fault Clinics pursuant to illicit kickback agreements;

- Unlike legitimate medical providers, 21st Century Pharmacy routinely misrepresented the maximum permissible charges under the No-fault Law for the Compound Pain Creams and/or Pain Patches allegedly provided to Covered Persons.

- Unlike legitimate medical providers, 21st Century Pharmacy misrepresented that it was in conformance with licensing which govern manufactures of compound drugs, when it was not;

- Unlike legitimate medical providers, 21st Century Pharmacy entered into kickback agreements with No-fault Clinics in order to generate a large volume of prescriptions pursuant to a fraudulent pre-determined treatment and billing protocol whereby Covered Persons received Compound Pain Creams and/or Pain Patches irrespective of medical necessity;

67.     In these and numerous other ways, the Defendants sought to deceive American Transit into paying fraudulent medical claims.

A.      **The Fraudulent Prescription Forms**

68.     On information and belief, as a matter of pattern, practice and protocol, the Prescribing No-fault Clinics routinely prescribed the Compound Pain Creams and Pain Patches utilizing pre-printed prescription forms provided to them directly by 21st Century (the "Fraudulent Prescription Forms").

69.     On information and belief, the Fraudulent Prescription Forms routinely contained boxes identifying at least thirteen (13) pre-formulated and mass produced Compound Pain Creams that the Prescribing No-fault Providers could select by placing a mark in the box next to the Compound Pain Cream that they were prescribing. By way of example and not limitation, the Fraudulent Prescription Forms contained boxes setting forth the following:

| GP1 Musculoskeletal Pain | NP3. Back Pain | GP6. Anti-Inflammatory |
|---|---|---|
| Baclofen 4% | Gabapentin 6% | Flurbiprofen  10% |
| Tetracaine 2% | Clonidine 0.1% | Lidocaine 5% |
| Ketorolac .5% | Diclofenac 2% | Cyclobenzaprine 2% |
| Diclofenac 3% | Lidocaine 2% | Baclofen 2% |
| Verapamil 6% | Pentoxifylline 5% |  |

70.     In addition to containing boxes for Compound Pain Cream, the Templated Prescriptions also contained boxes for up to six (6) different "General Pain Patches," including but not limited to Lidoderm 5%, Flector 1.3% and Terocin (Lidocaine 4% Menthol 4%).

71.     The Templated Prescriptions did not have the pre-printed names, addresses, or contact information of the Prescribing No-fault Clinics or prescribing doctors as required by law, but instead, routinely had 21st Century Pharmacy's pre-printed identifying information on them, including but not limited to its email address and fax number.

72.     In those instances where the Templated Prescription did not have 21st Century Pharmacy's pre-printed identifying information on them, they were devoid of any pre-printed provider information.

73.     In order to facilitate the fraud set forth herein, the Fraudulent Prescription Forms contained a box entitled "Prescriber Authorization," wherein the Prescribing No-fault Clinics would hand write in the name and contact information of the doctor who purported to issue the prescription.

74.     By creating and dispensing the Fraudulent Prescription Forms Prescribing to the No-fault Clinics, the Defendants violated the New York State Education Law which governs the issuance of prescriptions. By way of example and not limitation, the Fraudulent Prescription Forms created by the Defendants violated:

- Section 6810(6)(a), which provides that "[i]mprinted conspicuously on every prescription written in this state in eight point upper case type immediately below the signature line shall be the words: "THIS PRESCRIPTION WILL BE FILLED GENERICALLY UNLESS PRESCRIBER WRITES 'd a w' IN THE BOX BELOW." *See* N.Y. Educ. Law § 6810(6)(a) (McKinney) (2017).

- Section 6810(7)(a), which provides that "[n]o prescription for a drug written in this state by a person authorized to issue such prescription shall be on a prescription form which authorizes the dispensing or compounding of any other drug. No drug shall be dispensed by a pharmacist when such prescription form includes any other drug." *See* N.Y. Educ. Law § 6810(7)(a) (McKinney) (2017).

- Section 6810(8) which provides that "[e]"very prescription (whether or not for a controlled substance) written in this state by a person authorized to issue such prescription and containing the prescriber's signature shall, in addition to such signature, be imprinted or stamped legibly and conspicuously with the printed name of the prescriber who has signed the prescription. The imprinted or stamped name of the signing prescriber shall appear in an appropriate location on the prescription form and shall not be entered in or upon any space or line reserved for the prescriber's signature." *See* N.Y. Educ. Law § 6810(8) (McKinney) (2017).

75.     New York Education Law § 6811 makes it a crime for any person to enter into an agreement with a physician (or other licensed healthcare provider) for the compounding or dispensing of secret formula ("coded") prescriptions.

76.     On information and belief, Defendants created the Fraudulent Prescription Forms to intentionally limit the pharmaceutical options available to Covered Persons to those which could reap Defendants the most profit, notwithstanding any perceived benefit or harm to Covered Persons.

77.     Defendants' willful and knowing violations of Section 6810 of the Education Law were criminal acts pursuant to Section 6819 of the Education Law, which provides that it "shall be a class A misdemeanor" "to violate any of the provisions of section sixty-eight hundred ten of this article."

78.     In addition to violating the New York State Education Law, the Defendants, by creating and dispensing the Fraudulent Prescription Forms to the Prescribing No-fault Clinics, also violated Section 910 of the Official Compilation of Codes, Rules and Regulations of the State Of New York governing Official New York State Prescription Forms. By way of example and not limitation, the Fraudulent Prescription Forms created by the Defendants violated:

- Section 910(2)(a), which provides that "[a]ll prescriptions written in this State shall be issued on an official New York State prescription form provided by the department" [of health]. *See* 10 N.Y.C.R.R. § 910(2)(a).

- Section 910.2(f), which provides that "[a] prescription shall be issued by a practitioner for legitimate medical purposes in good faith and in the course of his or her professional practice only. An order purporting to be a prescription that is not issued for legitimate medical purposes is not a prescription within the meaning of the New York State Education Law and the New York State Public Health Law and the person knowingly dispensing such an order, as well as the person issuing such order, shall be subject to all penalties provided in law or regulations." *See* 10 N.Y.C.R.R. § 910(2)(f).

- Section 910(4)(a)(2), which provides that "[o]fficial New York State prescription forms shall be imprinted only with the primary address and other addresses listed on the registration of the facility or practitioner." *See* 10 N.Y.C.R.R. § 910(2)(f).

79.     New York Education Law § 6811 makes it a crime for any person to enter into an agreement with a physician (or other licensed healthcare provider) for the compounding or dispensing of secret formula ("coded") prescriptions.

80.     At all times relevant herein, the Defendants knew or should have known that the Fraudulent Prescription Forms were bogus.  By way of example and not limitation, Exhibit "C" in the accompanying Compendium of Exhibits is a representative sample of the Fraudulent Prescription Forms of the Compound Pain Creams provided to the Prescribing No-fault Clinics by 21st Century Pharmacy, and which 21st Pharmacy submitted to Plaintiff in support of its fraudulent billing.

**B.**     **Overview of FDA Compounding Guidelines**

81.     Drug compounding is generally the practice of combining, mixing, or altering ingredients to create a sterile or non-sterile and customized medication tailored to the needs of an individual patient in response to a practitioner's prescription.

82.     The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 353a (the "FFDCA"), as amended by the Food and Drug Administration Modernization Act of 1997 (FDAMA), addresses the FDA's role in the regulation of drug compounding.

83.     Pursuant to the FFDCA, a new drug, defined as "[a]ny drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized ... as safe and effective," may not be introduced into interstate commerce unless there is an approval process in which the FDA deems the new drug safe and effective.

84.     Pursuant to FDA guidelines, most prescription drugs are required to: (i) undergo premarket approval to demonstrate safety and efficacy; (ii) be labeled with adequate directions for

use so patients can safely use drugs for their intended purposes; and (iii) be manufactured according to current good manufacturing practice (CGMP) requirements, which are intended to assure the identity, strength, quality, and purity of drugs by requiring adequate control of manufacturing operations.

85.     Under certain conditions, drug products that are "compounded" are not subject to the foregoing requirements, and therefore do not require FDA approval.

86.     According to FDA guidelines, a drug may be compounded for a patient who cannot be treated with an FDA-approved medication, such as a patient who has an allergy and needs a medication to be made without a certain dye, or an elderly patient or a child who cannot swallow a tablet or capsule and needs a medicine in a liquid dosage form that is not otherwise available.

87.     Congress' intent in adopting the FFDCA's provisions with respect to drug compounding was to "ensure continued availability of compounded drug products as a component of individualized therapy, while limiting the scope of compounding so as to prevent manufacturing under the guise of compounding." *See* H.R. Rep. No. 105-399, at 94 (1997). As stated by Congress when adopting the FDAMA:

> "The exemptions in section (h)(1) are limited to compounding for an individual patient based on the medical need of such patient for the particular drug compounded. To qualify for the exemptions, the pharmacist or physician must be able to cite a legitimate medical need for the compounded product that would explain why a commercially available drug product would not be appropriate. Although recording the medical need directly on each prescription order would not be required, this technique would be one of many acceptable ways of documenting the medical need for each compounded drug product. This medical need would not include compounding drugs that are essentially copies of commercially available drug products for largely economic reasons. The pharmacist may rely on appropriately documented input from the physician as to whether a commercially available drug product is not appropriate for the identified individual patient. *See* S. Rep. No. 105-43, at 67-68 (1997).

88.     Pursuant to FDA guidelines, it is inappropriate to provide a patient with a compounded drug when there is an FDA-approved drug commercially available that is medically appropriate for them.

89.     Because compounded drugs are not FDA-approved, FDA does not verify their safety, effectiveness, or quality before they are marketed. The FDA also has observed that the labeling of compounded drugs often omits important information such as directions to help ensure that the drugs are used safely and warnings about possible side effects and drug interactions.

90.     The United States has had a long history of serious adverse events associated with contaminated, super-potent, mislabeled, or otherwise poor quality compounded drugs. Accordingly, in 2012, Congress passed the Drug Quality and Security Act (DQSA), which made important updates to the FFDCA regarding human drug compounding.

91.     In particular, the DQA amended section 503A of the FFDCA to describe the conditions under which compounded human drug products are exempt from the FFDCA sections on FDA approval prior to marketing, current good manufacturing practice (CGMP) requirements, and labeling with adequate directions for use.

92.     By way of example and not limitation, compounded human drug products are exempt from the FFDCA sections on FDA approval prior to marketing, current good manufacturing practice (CGMP) requirements, and labeling with adequate directions for use if the drug product is "compounded for an identified individual patient based on the receipt of a valid prescription order or a notation, approved by the prescribing practitioner, on the prescription order that a compounded product is necessary for the identified patient, if the drug product meets the requirements of this section," and if the compounding is "by a licensed pharmacist in a State licensed pharmacy…"

93.     On information and belief, because compounded products are not FDA-approved, such products should not be prescribed as a matter protocol; rather, they should only be prescribed when there is a legitimate medical need specific to an individual patient, and in the absence of commercially available medications.

**C.     Overview of Compounding Topical Pain Creams**

94.     One type of compounded drugs are topical pain creams, the role of which in pain management is not a scientifically proven fact. By way of example and not limitation, according to medical literature, due to the absence of specific compliance and adherence studies comparing topical treatment versus traditional routes in pain management, the role of topical preparations in patient adherence remains obscure.

95.     On information and belief, topical creams are locally administered treatments such as lidocaine 5% patch, capsaicin, EMLA (eutectic mixture of local anesthetics) cream, lidocaine 2, 5% and prilocaine 2, 5% creams.

96.     On information and belief, these should undergo trial in the range of 2-3 weeks for lidocaine and 4 weeks with capsaicin.

97.     On information and belief, the ingredients used in the Compound Pain Cream include nonsteroidal anti-inflammatory drugs NSAIDs, which is not always appropriate in some clinical settings. For example, it is well known that people who use NSAIDs (other than aspirin) may have a higher risk of having a heart attack or a stroke than people who do not use those medications, and these events may happen without warning and may even cause death.

98.     The medical standard, at all relevant times, in reference to topical drug delivery, as presented in the New York Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, First Edition, September 15, 2014 ("2014 MTG") pages: 37-38 and New York

Workers' Compensation Board Non-Acute Pain Medical Treatment Guidelines, Effective May 2, 2022, ("2022 MTG") page 40, states the following: "For most patients, the effects of long-term use are unknown and thus may be better used episodically. These agents may be used in those patients who prefer topical treatments over oral medications."

99.     With respect to the general guidance for the application of compound creams in treatment of pain, the FDA does not recommend compounding topical creams to be produced for clinical application and has noted its concern "about the serious public health risks" related to compounded topical anesthetic creams. Exposure to high concentrations of local anesthetics, like those in compounded topical anesthetic creams, can cause grave reactions including seizures and irregular heartbeats. Two deaths have been connected to compounded topical anesthetic creams.

100.     On information and belief, as noted by Dr. Steven Galson, Director of FDA's Center from Drug Evaluation and Research, "[c]ompounded topical anesthetic creams, like all compounded drugs, are not reviewed by FDA for safety and effectiveness, and are not FDA-approved. These high-potency drugs may expose patients to unnecessary risk, especially when they are used without proper medical supervision." Compounded topical anesthetic creams contain high doses of local anesthetics including lidocaine, tetracaine, benzocaine, and prilocaine. When different anesthetics are combined into one product, each anesthetic's potential for harm is increased. This potential harm may also increase if the product is left on the body for long periods of time or applied to broad areas of the body, particularly if an area is then covered by a bandage, plastic, or other dressing.

101.     According to the 2014 and 2022 New York Workers Compensation Board Medical Treatment Guidelines regarding Non-Acute Pain, "Topical, oral, and/or systemic compound

medications are not recommended." *See* 2014 MTG, pages: 28-38; *see also* 2022 MTG, pages 33-37.

**D.**     **Overview of New York State Regarding Fee Splitting and Solicitation of Patients**

102.    Pursuant to New York State law, a provider of healthcare services is not entitled to reimbursement for No-Fault Benefits if the provider fails to meet any applicable New York state or local licensing requirement necessary to perform such service in New York. *See* 11 N.Y.C.R.R. § 65-3.16(a)(12).

103.    New York Education Law § 6530(38) prohibits a licensed physician from entering into an arrangement or agreement with a pharmacy for the compounding and/or dispensing of coded or specially marked prescriptions,

104.    New York Education Law § 6811 makes it a crime for any person to enter into an agreement with a physician (or other licensed healthcare provider) for the compounding or dispensing of secret formula ("coded") prescriptions.

105.    New York Education Law § 6509-a, prohibits a professional licensee from "directly or indirectly" requesting, receiving, or participating in the division, transference, assignment, rebate, splitting, or refunding of a fee in connection with professional care or services including services related to drugs and/or medications.

106.    8 N.Y.C.R.R. § 29.1(b)(3) prohibits a professional licensee from "directly or indirectly" offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.

107.    New York Education Law § 6530(18) prohibits a licensed physician from "directly or indirectly" offering, giving, soliciting, receiving, or agreeing to receive any fee or other

consideration to or from a third party in exchange for patient referrals or in connection with the performance of professional services.

## MECHANICS OF THE SCHEME TO DEFRAUD

108.    Beginning in 2013 and continuing until the present day, Defendants and others not named in the Complaint have engaged in a systematic fraudulent billing schemes based upon the alleged provision of Compound Pain Creams, Pain Patches, and other pharmaceutical products to Covered Persons.

109.    Defendant Alishayev, through Defendant 21st Century Pharmacy, devised and carried out a scheme to fraudulently bill insurers, in general, and Plaintiff, in particular, for Compound Pain Creams and Pain Patches which were provided, if at all pursuant to fraudulent prescriptions based upon a pre-determined treatment protocol, irrespective of medical necessity, and further, cost a fraction of the amounts that Defendants materially misrepresented in their fraudulent bill submissions to Plaintiff.

110.    Defendants engaged in a massive scheme to defraud in which they, as a matter of pattern, practice, and protocol, manufactured, dispensed, or caused to be dispensed, expensive Compound Pain Cream and/or Pain Patches to Covered Persons irrespective of medical necessity.

## A.    Fraudulent Dispensing of Pre-formulated Compound Pain Creams

111.    As part of Defendants' scheme to defraud, 21st Century Pharmacy entered into kickback or other financial arrangements with the Prescribing No-fault clinics which, instead of prescribing FDA-approved and/or commercially available medications to Covered Persons, would instead prescribe and/or dispense the Compound Pain Creams without regard to the efficacy of the combination of drugs being combined in the compound.

112.     Regardless of whether a Covered Person was seen by a doctor on the date of the initial office visit at any of the Prescribing No-fault Clinics, a Covered Person's initial office consultation would automatically trigger a series of internal practices and procedures in which the Prescribing No-fault Clinics, in exchange for kickbacks and/or other financial compensation agreements with Defendants, would prescribe Compound Pain Creams and/or other pharmaceuticals pursuant to a standard protocol regardless of whether such Compound Pain Creams and/or other pharmaceuticals were medically necessary.

113.     Such Compound Pain Creams and/or other pharmaceuticals were issued for virtually every Covered Person, regardless of factors such as their age, height, weight, prior medical history, position in the vehicle and/or purported involvement in an accident.

114.     Irrespective of the needs of any individual Covered Person, the Prescribing No-fault Clinics prescribed the same pre-made, formulaic Compound Pain Creams which contained the exact same ingredients ("Protocol Ingredients) and/or other pharmaceuticals to each and every Covered Person.

115.     On information and belief, as part of the kickback or other financial compensation agreement with the Prescribing No-fault Clinics and in furtherance of the scheme to defraud, on their first or second visit to the Prescribing No-fault Clinic(s), the Covered Persons would be given a number of documents to complete and sign, including, but not limited to, assignment of benefit forms in favor of 21st Century Pharmacy, which, after execution, the Prescribing No-fault Clinics would transmit to 21st Century Pharmacy.

116.     In many if not all instances, the Prescribing No-fault Clinics never provided Covered Persons with the prescriptions for Compound Pain Cream to be filled at a pharmacy chosen by the Covered Persons. Rather, the Covered Persons were given the Compound Pain

Creams at the Prescribing No-fault Clinics without even being given the prescription, or in some instances, being told that such medication was being prescribed, to eliminate the possibility that the Covered Person(s) would fill the prescription(s) with a legitimate pharmacy.

117.   The prescriptions for Compound Pain Creams were filled by 21st Century Pharmacy as part of an illicit and collusive arrangement whereby, in exchange for issuing such prescriptions, the referring No-fault Providers received illegal payments from 21st Century Pharmacy.

118.   At all times relevant herein, 21st Century Pharmacy, as well as the Prescribing No-fault Clinics, knew that there were effective, commercially available, FDA-approved, and cheaper medications which would have been suitable to prescribe to Covered Persons, and that the Compound Pain Creams and/or other pharmaceuticals was being prescribed solely to enrich 21st Century Pharmacy and Prescribing No-fault Clinics.

119.   In furtherance of the scheme to defraud alleged herein, 21st Century Pharmacy manufactured the Compound Pain Cream in bulk, without regard to the needs of any particular Covered Person, in order to maximize the amount of profit they could reap from mixing the individual ingredients.

120.   At all relevant times, Prescribing No-fault Clinics prescribed the Compound Pain Cream irrespective of medical necessity as part of an illegal kickback scheme with 21st Century Pharmacy, and in virtually, if not all instances routinely: :

- Failed to document in Covered Persons' Initial Evaluation Reports as to why the Compound Pain Cream was medically necessary;

- Failed to document in Covered Persons' Initial Evaluation Reports if the Compound Pain Cream was being tailored for the specific patient;

- Failed to document in Covered Persons' Initial Evaluation Reports why commercially available over-the-counter, FDA approved medications could

not be prescribed instead of the Compound Pain Cream, such as in the case of a Covered Person allergy;

- Failed to document in Covered Persons' Initial Evaluation Reports why commercially available over-the-counter, FDA approved medications could not be prescribed instead of the Compound Pain Cream;

- Failed to document in Covered Persons' Follow-up Reports if the Compound Pain Cream was used by Covered Persons, and if so, was medically beneficial.

121. The Compound Pain Creams illegally manufactured, dispensed, and billed for by Defendants were never approved by the FDA or verified by the FDA to be safe and/or effective.

122. Defendants engaged in the scheme to defraud alleged herein when they knew or should have known that the efficacy of the Compound Pain Creams were not proven, and that substantially cheaper and commercially available FDA-approved medications proven to have therapeutic effects were available.

123. At all relevant times, one or more of the Compound Pain Creams manufactured by the Defendants, at the time of their issuance to Covered Persons, were available in different FDA approved formulations that are utilized by legitimate healthcare providers.

124. On information and belief, the Protocol Ingredients could have, and should have, been replaced with cheaper, over-the-counter, and readily available substitutes that have substantially similar, if not identical indications and effects.

125. On information and belief, compounded pain creams such as those dispensed by 21st Century Pharmacy should be a final treatment after oral medications and FDA approved topical creams are ineffective or not tolerated by patients.

126. On information and belief, the Compound Pain Creams provided by 21st Century Pharmacy consist of individual drugs that do not make clinical sense to combine into a compound

and are not effective in treating the neuropathic or musculoskeletal injuries for which they were prescribed.

127.     On information and belief, there are no published, peer-reviewed studies to support the therapeutic effect of pain creams consisting other medications that are in the Compound Pain Creams manufactured by 21st Century Pharmacy for the treatment of neuropathic and/or musculoskeletal pain, such as that purportedly suffered by Covered Persons.

128.     Given that the Compound Pain Creams were not individualized and tailored to meet specific individual patient needs, were not provided pursuant to medically necessary prescriptions, and were illegally compounded in set formulations in large quantities, they were dispensed in violation of federal law.  *See* 21 U.S. C. § 355 and 21 U.S.C. 353a(a).

129.     On information and belief, trial periods were not conducted prior to 21st Century Pharmacy dispensing Compound Pain Creams, because the Compound Pain Creams were dispensed as a matter of pattern, practice, and protocol without regard for medical necessity.

**B.**     **Fraudulent Billing In Excess of the Fee Schedule**

130.     In addition to fraudulently billing Plaintiff for pre-formulated Compound Pain Creams pursuant to a collusive pre-determined treatment protocol, Defendants routinely submitted bills to, and were paid by Plaintiff for Compound Pain Creams far in excess of the amounts which would be permissible under the prevailing Pharmacy Fee Schedule if the Compound Pain Creams were legitimately prescribed and dispensed.

131.     At all relevant times herein, pursuant to the Pharmacy Fee Schedule governing compounded products, 21st  Century was entitled to the average wholesale price (AWP) minus 12% (for brand name drugs) or 20% (for generic drugs) for each ingredient within the compound creams, together with a nominal dispensing fee.

132.    Notwithstanding the Pharmacy Fee Schedule, in furtherance of the scheme to defraud alleged herein, Defendants routinely submitted bills to Plaintiff for reimbursement in amounts that reflected inflated AWPs, and/or rates that exceeded the AWPs, without applying any reductions for brand name drugs and/or generic drugs.

**i)    NP3 Back Pain Compound Cream**

133.    In furtherance of the scheme to defraud alleged herein, Defendants routinely billed Plaintiff for "NP3 Compound Back Pain Cream" at inflated rates in excess of the amounts permissible by the Pharmacy Fee Schedule, that Defendants knowingly and fraudulently dispensed as a bulk produced compounded cream, which was not tailored to any specific Covered Person.

134.    By way of example and not limitation, on or about April 6, 2016, 21st Century Pharmacy allegedly dispensed NP3 Compound Back Pain Cream (consisting of Clonidine, Lidocaine, Pentoxifylline, Gabapentin, Diclofenac Sodium and Versapro cream base) to Covered Person E.W. (Claim No. 787806-03). On or about May 22, 2016 and July 1, 2016 respectively, 21st Century Pharmacy subsequently dispensed two refills of NP-3 Back Pain Cream to Covered Person E.W., consisting of the same drugs, in the same proportion and quantity, as the April 6, 2016 cream.

135.    On information and belief, all of the ingredients utilized by 21st Century Pharmacy in the NP3 Compound Back Pain Cream were generic.

136.    To the extent that the NP3 Compound Back Pain Cream dispensed by Defendants was reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, it would have been reimbursable at an aggregate amount of the AWP for each individual drug, minus 20%, plus a $5.00 dispensing fee.

137.    In connection with all three (3) occasions on which NP3 Compound Back Pain Cream was purportedly dispensed to Covered Person E.W. by 21st Century, American Transit was billed as follows:

| Drug Name | NDC No. | Quantity (grams) | Total Billed | Total Allowed by Fee Schedule | Amount Fraudulently Charged |
|---|---|---|---|---|---|
| Clonidine | 38779056105 | 0.3 | $61.84 | $49.59 | $12.25 |
| Lidocaine | 38779008208 | 6 | $25.66 | $20.52 | $5.14 |
| Versapro | 38779252907 | 254.7 | $815.14 | $652.03 | $136.11 |
| Pentoxifylline | 38779256008 | 15 | $124.34 | $99.45 | $24.89 |
| Gabapentin | 38779246108 | 18 | $1,077.20 | $861.84 | $215.36 |
| Diclofenac Sodium | 38779268308 | 6 | $88.82 | $70.98 | $17.84 |
| TOTALS | | | $2,193.00 | $1,754.41 | $438.59 |

138.    As a matter of pattern, practice, and protocol, 21st Century Pharmacy routinely and fraudulently billed Plaintiff for NP3 Compound Back Pain Cream at inflated amounts that did not take into account any reductions for generic drug pricing and/or name brand pricing, to the extent applicable, as required by the Pharmacy Fee Schedule.

139.    To the extent that the NP3 Compound Back Pain Cream dispensed by Defendants were reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, it would have been reimbursable at an amount of $1,754.41.

140.    To the extent that the NP-3 Back Pain Cream dispensed by Defendants were reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, Defendants routinely overcharged Plaintiff in the amount of $438.59 in each instance that the NP3 Compound Back Pain Cream was purportedly dispensed.

141.    By way of example and not limitation, in furtherance of the scheme to defraud alleged herein, 21st Century purportedly dispensed the same pre-formulated NP3 Compound Back Pain Cream to the following American Transit Covered Persons, and, in each instance, billed

Plaintiff in inflated amounts far in excess of what would have been permitted pursuant to the Pharmacy Fee Schedule:

| Claim No. | Covered Person | Date Allegedly Filled |
|-----------|----------------|-----------------------|
| 667274-05 | AH. | 7/18/16 |
| 667274-03 | T.K. | 7/3/16 |
| 780674-04 | G.J. | 3/11/16 & 6/20/2016 |
| 665935-06 | C.M. | 5/31/16 |
| 786381-03 | M.B | 3/16/16 |
| 783535-03 | C.C. | 9/2/15 |
| 661333-02 | A.M.-M. | 7/13/15 & 8/5/15 |
| 781971-02 | K.U.I. | 5/13/15 |
| 659647-02 | D.D. | 4/7/15 |
| 659225-03 | A.F. | 3/23/15 |
| 906165-07 | I.D.P.L. | 3/24/15 |

142.    On information and belief, 21st Century Pharmacy was not and is not entitled to any reimbursement from Plaintiff for NP3 Compound Back Pain Cream.

143.    Defendants' activities described herein with respect to NP3 Compound Back Pain Cream promoted and facilitated other acts that imposed foreseeable costs onto Plaintiff, including, but not limited to, Plaintiff's expenditures for verifying each fraudulent claim through examinations under oath ("EUOs"), associated attorneys' and court reporting fees, independent medical examinations ("IMEs"), and peer reviews

**ii)    GP1 Musculoskeletal Compound Pain Cream**

144.    In furtherance of the scheme to defraud alleged herein, Defendants routinely billed Plaintiff for "GP1 Musculoskeletal Compound Pain Cream" at inflated rates in excess of the amounts permissible under the Pharmacy Fee Schedule, that Defendants knowingly and fraudulently dispensed as a bulk produced compounded cream which was not tailored to any specific Covered Person.

145.    By way of example and not limitation, on or about June 23, 2015, 21st Century Pharmacy allegedly dispensed GP1 Musculoskeletal Compound Pain Cream (consisting of

Baclofen, Tetracaine HCL, Ketorolac Tromethamine, Diclofenac Sodium, Verapamil HCL, and Versapro cream base) to Covered Person W.W. (Claim No. 907428-05), and on or about July 17, 2015, and August 13, 2015 respectively, 21st Century Pharmacy subsequently dispensed two refills of GP1 Musculoskeletal Compound Pain Cream to Covered Person W.W., consisting of the same drugs, in the same proportion and quantity, as the June 23, 2015 cream.

146.    By way of further example and not limitation, on or about February 17, 2015, 21st Century Pharmacy allegedly dispensed the same GP1 Musculoskeletal Compound Pain Cream to Covered Person J.D. (Claim No. 779511-04), and on April 23, 2015, and on May 23, 2015, respectively, 21st Century Pharmacy subsequently dispensed two refills of GP1 Musculoskeletal Compound Pain Cream to Covered Person W.W., consisting of the same drugs, in the same proportion and quantity, as the February 17, 2015 cream.

147.    On information and belief, all of the ingredients utilized by 21st Century Pharmacy in the GP1 Musculoskeletal Compound Pain Cream were generic.

148.    On information and belief, to the extent that the GP1 Musculoskeletal Compound Pain Cream dispensed by Defendants was reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, it would have been reimbursable at an aggregate amount of the AWP for each individual drug, minus 20%, plus a $5.00 dispensing fee.

149.    In connection with all six (6) occasions on which GP1 Musculoskeletal Compound Pain Cream was purportedly dispensed to Covered Persons W.W. and E.W. by 21st Century, American Transit was billed as follows:

| Drug Name | NDC No. | Quantity (grams) | Total Billed | Total Allowed by Fee Schedule | Amount Fraudulently Charged |
|---|---|---|---|---|---|
| Baclofen | 38779038808 | 12 | $427.77 | $342.05 | $85.72 |
| Tetracaine HCL | 38779056608 | 6 | $40.11 | $32.10 | $8.01 |
| Ketorolac Tromethamine | 38779224905 | 1.5 | $224.35 | $179.55 | $44.80 |
| Diclofenac Sodium | 38779268308 | 9 | $133.12 | $106.51 | $26.61 |
| Verapamil HCL | 38779027508 | 18 | $138.45 | $110.81 | $27.64 |
| Versapro | 38779252907 | 253.5 | $811.15 | $648.96 | $162.19 |
| **TOTALS** | | | **$1,774.95** | **$1,419.97** | **$354.98** |

150.    On information and belief, as a matter of pattern, practice, and protocol, 21st Century Pharmacy routinely and fraudulently billed Plaintiff for GP1 Musculoskeletal Compound Pain Cream at inflated amounts that did not take into account any reductions for generic drug pricing and/or name brand pricing, to the extent applicable, as required by the Pharmacy Fee Schedule.

151.    On information and belief, to the extent that the GP1 Musculoskeletal Compound Pain Cream dispensed by Defendants was reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, it would have been reimbursable at an amount of $1,774.95.

152.    On information and belief, to the extent that the GP1 Musculoskeletal Compound Pain Cream dispensed by Defendants was reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, Defendants routinely overcharged Plaintiff in the amount of $354.98 in each instance that the GP1 Musculoskeletal Compound Pain Cream was purportedly dispensed.

153.    By way of example and not limitation, in furtherance of the scheme to defraud alleged herein, 21st Century purportedly dispensed the same pre-formulated GP1 Musculoskeletal

Compound Pain Cream to the following American Transit Covered Persons, and, in each instance, billed Plaintiff in inflated amounts far in excess of what would have been permitted pursuant to the Pharmacy Fee Schedule:

154.    Moreover, such charges for GP1 Musculoskeletal Compound Pain Cream are part of a pervasive scheme encompassing a multitude of Covered Persons on a routine and repeated basis.  By way of a representative example, 21st Century purportedly dispensed and billed the same GP1 Musculoskeletal Compound Pain Cream to the following American Transit Covered Persons:

| Claim No. | Covered Person | Date(s) Allegedly Filled |
|---|---|---|
| 660539-03 | N.G. | 3/19/15 & 4/2/15 |
| 666088-03 | I.H. | 5/26/16 |
| 784737-04 | Z.Q. | 4/11/16 |
| 784806-02 | J.S. | 4/7/16 |
| 664079-03 | M.J.T. | 3/21/16 |
| 784058-07 | A.S. | 3/23/16 |
| 785134-05 | F.J. | 2/1/16 & 3/23/2016 |
| 782897-05 | M.C. | 11/3/15 & 12/3/15 |
| 783652-04 | E.M.P. | 11/23/15 |
| 662402-06 | G.P. | 11/1/15 |
| 906535-11 | O.M. | 4/28/15 |
| 783460-03 | B.N.K. | 10/28/15 |
| 660697-02 | R.E. | 8/13/15 |
| 783206-03 | H.B. | 8/19/15 |
| 658339-02 | M.C. | 10/11/15 |
| 782216-03 | K.J. | 9/30/15 |
| 659068-01 | M.G. | 9/25/15 |
| 783490-05 | P.M. | 9/10/15 |
| 659944-02 | M.S. | 9/4/15 |
| 780310-02 | V.L. | 8/24/15 |
| 660365-05 | M.D. | 7/26/15 |
| 661673-02 | J.H. | 7/13/15 |
| 660644-02 | R.E.R. | 6/19/15 |
| 660729-03 | A.S. | 6/3/15 |
| 657626-05 | S.S. | 4/21/15 & 5/26/15 |
| 779426-04 | J.R. | 4/23/15 & 5/19/15 |
| 778041-03 | C.P.M. | 5/15/15 |

| Claim No. | Covered Person | Date(s) Allegedly Filled |
|-----------|----------------|--------------------------|
| 781140-02 | H.G. | 5/3/15 |
| 660011-04 | R.C. | 4/24/15 |
| 780170-03 | R.T. | 4/9/15 |
| 657959-02 | T.M. | 4/1/15 |
| 659084-02 | A.S. | 4/1/15 |
| 657217-02 | A.A. | 3/18/15 |
| 780098-02 | R.D. | 3/6/15 |
| 778717-07 | R.S.P. | 2/26/15 |
| 778717-05 | R.P. | 2/26/15 |
| 658123-02 | E.D. | 2/25/15 |
| 657769-02 | L.R.L. | 2/25/15 |
| 658591-03 | E.B. | 2/2/15 |
| 658123-02 | E.D. | 1/16/15 |
| 904911-02 | W.P. | 2/2/15 |
| 658591-05 | F.G. | 2/1/15 |

155.    Although 21st Century may market its products as individualized compound formulations catered to the medical needs of each patient, each of the GP1 Musculoskeletal Compound Pain Creams dispensed to the above-referenced Covered Persons contained identical drugs, formulations, proportions, and quantities, and were in no way customized to any given Covered Person.

156.    On information and belief, 21st Century Pharmacy was not and is not entitled to any reimbursement from Plaintiff for GP1 Musculoskeletal Compound Pain Cream.

157.    Defendants' activities described herein with respect to GP1 Musculoskeletal Compound Pain Cream promoted and facilitated other acts that imposed foreseeable costs onto Plaintiff well beyond the insurance proceeds that Defendants collected, including, but not limited to, Plaintiff's expenditures for verifying each fraudulent claim through examinations under oath ("EUOs"), associated attorneys' and court reporting fees, independent medical examinations ("IMEs"), and peer reviews.

### iii)   __GP6 Anti-Inflammatory Compound Cream__

158.     In furtherance of the scheme to defraud alleged herein, Defendants routinely billed Plaintiff for "GP6 Anti-Inflammatory Compound Cream" at inflated rates in excess of the amounts permissible under the Pharmacy Fee Schedule, that Defendants knowingly and fraudulently dispensed as a bulk produced compounded cream which was not tailored to any specific Covered Person.

159.     By way of example and not limitation, on or about April 28, 2015, 21st Century Pharmacy allegedly dispensed GP6 Anti-Inflammatory Compound Cream (consisting of Flurbiprofen, Baclofen, Cyclobenzaprine, Lidocaine, and Versapro cream base) to Covered Person L.E. (Claim No. 780097-03), and on or about May 22, 2015, July 23, 2015, and August 17, 2015, respectfully, 21st Century Pharmacy allegedly dispensed three refills of GP6 Anti-Inflammatory Compound Cream to Covered Person L.E., consisting of the same drugs, in the same proportion and quantity, as the April 28, 2015 cream.

160.     On information and belief, all of the ingredients utilized by 21st Century Pharmacy in the dispensed GP6 Anti-Inflammatory Compound Cream were generic.

161.     To the extent that the GP6 Anti-Inflammatory Compound Cream dispensed by Defendants was reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, it would have been reimbursable at an aggregate amount of the AWP for each individual drug, minus 20%, plus a $5.00 dispensing fee.

162.    In connection with all four (4) occasions on which the GP6 Anti-Inflammatory Compound Cream was purportedly dispensed to Covered Person L.E. by 21st Century, American Transit was billed, as follows:

| Drug Name | NDC | Quantity (grams) | Total Billed | Total Allowed by Fee Schedule | Amount Fraudulently Charged |
|---|---|---|---|---|---|
| Flurbiprofen | 38779273908 | 30 | $1,097.31 | $877.80 | $219.51 |
| Baclofen | 38779038808 | 6 | $213.68 | $171.00 | $42.68 |
| Cyclobenzaprine | 38779039508 | 6 | $278.09 | $222.42 | $55.67 |
| Lidocaine | 38779008208 | 15 | $64.18 | $51.30 | $12.88 |
| Versapro | 38779252907 | 243 | $777.64 | $622.08 | $155.56 |
| TOTALS | | | $2,430.90 | $1,944.60 | $486.30 |

163.    As a matter of pattern, practice, and protocol, 21st Century Pharmacy routinely and fraudulently billed Plaintiff for GP6 Anti-Inflammatory Compound Cream at inflated amounts that did not take into account any reductions for generic drug pricing and/or name brand pricing, to the extent applicable, as required by the Pharmacy Fee Schedule.

164.    To the extent that the GP6 Anti-Inflammatory Compound Cream dispensed by Defendants was reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, it would have been reimbursable at an amount of $1,944.60.

165.    To the extent that the GP6 Anti-Inflammatory Compound Cream dispensed by Defendants was reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, Defendants routinely overcharged Plaintiff in the amount of $486.30 in each instance that the GP6 Anti-Inflammatory Compound Cream was purportedly dispensed.

166.    By way of example and not limitation, in furtherance of the scheme to defraud alleged herein, 21st Century purportedly dispensed the same pre-formulated GP6 Anti-Inflammatory Compound Cream to the following American Transit Covered Persons, and, in each

instance, billed Plaintiff in inflated amounts far in excess of what would have been permitted pursuant to the Pharmacy Fee Schedule:

| Claim Number | Covered Person | Date(s) allegedly Filled |
|---|---|---|
| 665325-02 | C.A.P. | 5/27/16 |
| 783977-03 | L.A. | 10/16/15 |
| 658029-05 | G.F. | 8/20/15 & 10/12/15 |
| 782120-02 | E.M.V. | 9/9/15 |
| 660365-03 | M.K. | 9/10/15 |
| 783490-03 | J.O. | 9/10/15 |
| 780097-03 | L.E. | 4/28/15, 5/22/15, 7/23/15 & 8/17/15 |
| 782276-03 | I.T. | 8/13/15 |
| 782901-03 | C.Y.J. | 7/28/15 |
| 781135-04 | T.J.E. | 7/28/15 |
| 659890-02 | D.A. | 7/28/15 |
| 907836-04 | F.H. | 7/13/15 |
| 660539-03 | N.G. | 6/24/15 |
| 660447-02 | F.K. | 7/1/15 |
| 660539-05 | J.D.L.S. | 3/5/15 & 4/2/2015 |
| 780575-02 | C.J.S. | 4/2/2015 & 4/27/15 |
| 659654-03 | C.D. | 3/24/15 & 4/19/15 |
| 659971-01 | E.F. | 4/16/15 |
| 781745-05 | L.M.D. | 4/1/15 |
| 780104-02 | J.D. | 1/21/15 & 2/23/15 |

167.    On information and belief, 21st Century Pharmacy was not and is not entitled to any reimbursement from Plaintiff for GP6 Anti-Inflammatory Compound Cream.

168.    Defendants' activities described herein with respect to GP6 Anti-Inflammatory Compound Cream promoted and facilitated other acts that imposed foreseeable costs onto Plaintiff well beyond the insurance proceeds that Defendants collected, including, but not limited to, Plaintiff's expenditures for verifying each fraudulent claim through examinations under oath ("EUOs"), associated attorneys' and court reporting fees, independent medical examinations ("IMEs"), and peer reviews.

**iv)**      **NP2 General Neuralgia Compound Cream**

169.     In furtherance of the scheme to defraud alleged herein, Defendants routinely billed Plaintiff for "NP2 General Neuralgia Compound Cream" at inflated rates in excess of the amounts permissible under the Pharmacy Fee Schedule, that Defendants knowingly and fraudulently dispensed as a bulk produced compounded cream which was not tailored to any specific Covered Person.

170.     By way of example and not limitation, on or about February 14, 2018, 21st Century Pharmacy allegedly dispensed NP2 General Neuralgia Compound Cream (consisting of Ketoprofen, Baclofen, Lidocaine, Cyclobenzaprine, Gabapentin, and Versapro cream base) to Covered Person N.C. (Claim No. 1012911-02), and  two weeks later, on or about March 1, 2018, dispensed a refill of NP2 General Neuralgia Compound Cream to Covered Person N.C. consisting of the same drugs, in the same proportion and quantity, as the February 14, 2018 cream.

171.     By way of further example and not limitation, on or about November 20, 2017, 21st Century Pharmacy allegedly dispensed NP2 General Neuralgia Compound Cream (consisting of Ketoprofen, Baclofen, Lidocaine, Cyclobenzaprine, Gabapentin, and Versapro cream base) to Covered Person O.B. (Claim No. 675782-02), and  two weeks later, or about December 4, 2017 dispensed a refill of NP2 General Neuralgia Compound Cream to Covered Person O.B. consisting of the same drugs, in the same proportion and quantity, as the November 20, 2017 cream.

172.     On information and belief, all of the ingredients utilized by 21st Century Pharmacy in the NP2 General Neuralgia Compound Cream were generic.

173.     To the extent that the NP3 Back Pain Cream dispensed by Defendants was reimbursable pursuant to the Pharmacy Fee Schedule, which it was not, it would have been

reimbursable at an aggregate amount of the AWP for each individual drug, minus 20%, plus a $5.00 dispensing fee.

174.    In each instance that 21st Century Pharmacy billed Plaintiff for NP2 General Neuralgia Compound Cream, 21st Century Pharmacy did so in amounts far in excess of the amounts it would have been entitled to under the Pharmacy Fee Schedule, to the extent that the NP2 General Neuralgia Compound Cream was properly dispensed (which it was not). A representative sample of claims in which 21st Century Pharmacy billed Plaintiff for NP2 General Neuralgia Compound Cream in amounts far in excess of the Pharmacy Fee Schedule is contained in the chart below:

| Claim Number | Covered Person | Date Allegedly Filled |
|---|---|---|
| 1019031-01 | L.E.-C. | 2/15/18 & 3/5/18 |
| 1012628-01 | J.H. | 2/5/18 & 3/3/18 |
| 1003399-08 | B.W. | 2/8/18 |
| 1008756-01 | E.B. | 11/6/17 & 11/22/17 |
| 1001304-11 | J.L. | 10/18/17 & 11/9/17 |
| 1008329-02 | S.R. | 11/6/17 & 11/22/17 |
| 795597-03 | R.V.A.F. | 10/12/17 & 11/3/17 |
| 1003677-02 | L.J. | 11/8/17 |

175.    On information and belief, Century Pharmacy was not and is not entitled to any reimbursement from Plaintiff for NP2 General Neuralgia Compound Cream.

176.    Defendants' activities described herein with respect to  promoted and facilitated other acts that imposed foreseeable costs onto Plaintiff well beyond the insurance proceeds that Defendants collected, including, but not limited to, Plaintiff's expenditures for verifying each fraudulent claim through examinations under oath ("EUOs"), associated attorneys' and court reporting fees, independent medical examinations ("IMEs"), and peer reviews.

C.      **Fraudulent Dispensing of Pain Patches**

177.    In addition to fraudulently dispensing Compound Pain Creams, the Defendants, as a matter of pattern, practice, and protocol, and in furtherance of the fraudulent scheme alleged herein, routinely dispensed Pain Patches to Covered Persons based upon a collusive pre-determined treatment protocol whereby the Prescribing No-fault clinics would prescribe Pain Patches using the Templated Prescription irrespective of medical necessity.

178.    On information and belief, the acute stages after soft tissue trauma, such as that purportedly sustained by Covered Persons, include an inflammatory process usually managed by systemic, oral non-steroidal anti-inflammatory medications that are already proven to be potent in controlling inflammations and symptoms of pain, combined by a course of conservative therapy program, which may include several modalities and an exercise program.

179.    On information and belief, to the extent that oral non-steroidal anti-inflammatory medications are not effective as a first-line treatment, are contraindicated with other medications taken and/or have the potential to cause allergic reactions, over-the-counter pain patches may then be offered in an attempt to provide pain relief.

180.    On information and belief, as part of the scheme to defraud alleged herein, the Referring Providers routinely prescribed expensive Pain Patches to Covered Persons notwithstanding that the Referring Prescribers failed to document that oral pain medication was contradicted and/or caused an allergy, or failed as a first-line therapy.

181.    By way of example and not limitation, Terocin Pain Patches are topical, analgesic patches that can purportedly be used to temporarily relieve minor muscle and joint pains, with the active ingredients of menthol (a topical analgesic) and lidocaine (a topical anesthetic).

182.    Terocin Pain Patches are available over-the-counter, and do not require a prescription.

183.    As an over-the-counter medication, Terocin Pain Patches are not covered under the No-fault Laws.

184.    Terocin Pain Patches have an NDC number of 50488-1001-01, and had a reported AWP of $32.60 per patch from June 1, 2013 to July 30, 2015, and then $42.60 per patch from July 1, 2015 until February 27, 2017, at which time the AWP increased to $48.50 per patch.

185.    21st Century Pharmacy, as a matter of pattern, practice, and protocol, routinely and knowingly submitted bills to Plaintiff for Terocin Pain Patches using their NDC number and AWP to create the facial illusion that the billed-for-items were reimbursable pursuant to the No-fault Law, when they were not.

186.    21st Century Pharmacy, as a matter of pattern, practice and protocol, routinely dispensed Terocin Pain Patches is boxes of sixty (60 patches) and billing Plaintiff as much as $2,556 per box.

187.    On information and belief, 21st Century Pharmacy was not and is not entitled to any reimbursement from Plaintiff for the Pain Patches identified on the Fraudulent Prescription Forms in general, and Terocin Pain Patches in particular.

188.    By way of further example and not limitation, as part of the scheme to defraud alleged herein, the Referring Providers routinely prescribed Lidoderm (Lidocaine 5%) pain patches to Covered Persons notwithstanding that the Referring Prescribers failed to document that oral pain medication was contradicted and/or caused an allergy, or failed as a first-line therapy.

189.     On information and belief, Lidocaine is used to relieve the pain of post-herpetic neuralgia, also referred to, as after-shingles pain.

190.     According to the 2014 and 2022 *New York State Workers' Compensation Board, Non-Acute Pain Medical Treatment Guidelines:* **"**Topical lidocaine is only indicated when there is documentation of a diagnosis of neuropathic pain. In this instance, a trial for a period of not greater than four weeks can be considered, with the need for documentation of functional gains as criteria for additional use." *See* 2014 MTG, page 38; *see also* 2022 MTG, page 40.

191.     The Referring Providers routinely failed to document any functional deficit that could be managed by Lidocaine or a contraindication to use oral medications, demonstrating that the Lidoderm patches were dispensed as part of an illegal kickback arrangement in furtherance of the scheme to defraud alleged herein.

## DISCOVERY OF THE FRAUD

192.     Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from American Transit, American Transit did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before they filed this Complaint.

## FIRST CLAIM FOR RELIEF

## AGAINST ALBERT ALISHAYEV

## (RICO, pursuant to 18 U.S.C § 1962(c))

193.     The allegations of paragraphs 1 through 192 are hereby repeated and re-alleged as though fully set forth herein.

**THE RICO ENTERPRISE**

194.    From in or about 2014 through the date of the filing of this Complaint, Alishayev conducted and participated in the affairs of the 21st Century Pharmacy Inc. enterprise through a pattern of racketeering activity, including the many acts of mail fraud described herein and in the representative list of predicate acts, annexed hereto, all of which are incorporated by reference. Defendant's conduct constitutes a violation of 18 U.S.C. § 1962(c).

195.    At all relevant times mentioned herein, Alishayev participated in the affairs of the 21st Century Pharmacy Inc. enterprise through a pattern of racketeering activities that consisted of creating, submitting and/or causing to be submitted fraudulent bills and supporting documents to Plaintiff that were based, in part, on the dispensing of pharmaceutical products, including but not limited to Compound Pain Creams and/or Pain Patches (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; (iv) in violation of Federal regulations regarding the compounding of medications and/or (v) intentionally billing for such products in amounts far in excess of the amounts permissible pursuant to the Pharmacy Fee Schedule.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

196.    The racketeering acts set forth herein were carried out on a continued basis over more than a 6-year period, were related and similar, and were committed as part of Alishayev's ongoing scheme to fraudulently pharmaceutical products, including but not limited to Compound Pain Creams and/or Pain Patches, to defraud insurers and, if not stopped, such acts will continue into the future.

197.    This pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as 21st Century Pharmacy Inc. continues to pursue collection on the fraudulent billing to the present day.

198.    As a part of the pattern of racketeering activity, and for the purpose of executing the scheme and artifice to defraud as described above, Alishayev caused mailings to be made through the United States Postal Service, in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud American Transit Insurance Company and to induce it to issue checks to the 21st Century Pharmacy Inc. enterprise based upon materially false and misleading information.

199.    Through the 21st Century Pharmacy Inc. enterprise, Alishayev submitted fraudulent claim forms seeking payment for pharmaceutical products, including but not limited to Compound Pain Creams and/or Pain Patches that were dispensed (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; (iv) in violation of Federal regulations regarding the compounding of medications;  and/or  (v) intentionally billing for such products in amounts far in excess of the amounts permissible pursuant to the Pharmacy Fee Schedule.  The bills and supporting documents that were sent by and/or on behalf of Alishayev and/or others acting under his direction and control, as well as the payments that Plaintiff made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Alishayev engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the 21st Century Pharmacy Inc. enterprise through the filing of this Complaint.

200.     A sample list of predicate acts is annexed hereto which identifies the nature and date of mailings that were made by or on behalf of Alishayev in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

201.     Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(b).

202.     Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

203.     By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property, in an amount in excess of $335,000.00, the exact amount to be determined at trial.

204.     Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover, from Defendant Alishayev, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SECOND CLAIM FOR RELIEF

### AGAINST 21ST CENTURY PHARMACY INC. AND ALBERT ALISHAYEV

### (Common Law Fraud)

205.     The allegations of paragraphs 1 through 192 are hereby repeated and re-alleged as though fully set forth herein.

206.     Defendants 21st Century Pharmacy and Alishayev intentionally, knowingly, fraudulently, and with an intent to deceive Plaintiff, made numerous false and misleading statements of material fact as to the necessity and price of the pharmaceutical products which they purportedly dispensed, thereby inducing Plaintiff to make payments to Defendants that Defendants

were not entitled to because of their fraudulent nature.   As part of the fraudulent scheme implemented by Alishayev, 21st Century Pharmacy made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiff for payment.

207.   Defendants 21st Century Pharmacy and Alishayev intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiff, concealed the fact that the bills submitted to them for reimbursement of No-fault benefits for services relating to the dispensing of pharmaceutical products, including but not limited to the Compound Pain Creams and Pain Patches, were misrepresented.

208.   Defendants 21st Century Pharmacy and Alishayev intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiff, concealed the fact that the pharmaceutical products which they purportedly dispensed, including but not limited to the Compound Pain Creams and Pain Patches, were dispensed (i) pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; (iv) in violation of Federal regulations regarding the compounding of medications; and/or (v) intentionally billing for such products in amounts far in excess of the amounts permissible pursuant to the Pharmacy Fee Schedule.

209.   Defendants 21st Century Pharmacy and Alishayev intentionally, knowingly, fraudulently, and with the intent to commit and facilitate billing fraud and deceive Plaintiff, concealed the fact that the services were provided pursuant to a protocol that was intended to maximize Defendants' profit and reimbursement of payments from Plaintiff, as opposed to medical necessity.

210.     On information and belief, Defendants intentionally, knowingly, fraudulently, and with the intent to deceive, submitted, or caused to be submitted to Plaintiff, patient medical records, assignments of benefits, wholesale invoices, prescriptions, reports, treatment verifications and/or bills for medical treatment, which contained false representations of material facts, including but not limited to the following fraudulent material misrepresentations:

- False and misleading statements that 21st Century Pharmacy was dispensing Compound Pain Creams and Pain Patches pursuant to legitimate New York State Prescriptions, when  it was not;

- False and misleading statements that 21st Century Pharmacy was billing Plaintiff the maximum permissible charges under the No-fault Law for the Compound Pain Creams and Pain Patches allegedly provided to Covered Persons.

- False and misleading statements that 21st Century Pharmacy was in conformance with licensing which govern manufacture of compound drugs, when it was not;

- False and misleading statements that the Compound Pain Creams and Pain Patches were medically necessary;

- False and misleading statements as to whether Compound Pain Creams were being tailored for a specific patient; and

- False and misleading statements regarding the availability of over-the-counter, FDA approved medications in lieu of Compound Pain Creams and Pain Patches.

211.     On information and belief, in numerous instances, the medical records, reports, invoices, prescriptions and bills submitted, or caused to be submitted, by Defendants to Plaintiff contained false representations which were intended not only to defraud Plaintiff, but constituted a grave and serious danger to the Covered Persons and the consumer public.

212.     The foregoing was intended to deceive and mislead Plaintiff into believing that Alishayev, through 21st Century Pharmacy was providing medically valid compounded pain creams and pain patches when, in fact, he was not.

213.    Defendants knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiff to rely thereon.

214.    Plaintiff did in fact reasonably and justifiably rely on the foregoing material misrepresentations, which it was led to believe as a result of Defendants' acts of fraud and deception.

215.    Had Plaintiff known of the fraudulent content of, and misrepresentations within the documentation and bills submitted to it, Plaintiff would not have paid 21st Century Pharmacy's claims for No-fault insurance benefits.

216.    Furthermore, Defendants' far reaching pattern of fraudulent conduct evinces a high degree of moral turpitude and wanton dishonesty which, as alleged above, has harmed, and will continue to harm, the public at large, thus entitling Plaintiff to recovery of exemplary and punitive damages.

217.    By reason of the foregoing, Plaintiff has sustained compensatory damages and been injured in its business and property in an amount in excess of $335,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages, and other relief the Court deems just.

## THIRD CLAIM FOR RELIEF

### AGAINST 21ST CENTURY PHARMACY INC. AND ALBERT ALISHAYEV

### (Unjust Enrichment)

218.    The allegations of paragraphs 1 through 192 are hereby repeated and re-alleged as though fully set forth herein.

219.    By reason of their wrongdoing, Defendants 21st Century Pharmacy and Alishayev have been unjustly enriched, in that they have, directly and/or indirectly, received monies from

Plaintiff that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

220.     Plaintiff is therefore entitled to restitution from Defendants 21st Century Pharmacy and Alishayev in the amount by which Defendants have been unjustly enriched.

221.     By reason of the foregoing, Plaintiff has sustained compensatory damages and been injured in its business and property in an amount in excess of $335,000.00, the exact amount to be determined at trial, plus interest, costs, and other relief the Court deems just.

## FOURTH CLAIM FOR RELIEF

## AGAINST 21ST CENTURY PHARMACY INC.

### (Declaratory Judgment under 28 U.S.C. § 2201)

222.     The allegations of paragraphs 1 through 192 are hereby repeated and re-alleged as though fully set forth herein.

223.     At all relevant times mentioned herein, the bills mailed by 21st Century Pharmacy to Plaintiff sought reimbursement for Compound Pain Creams and Pain Patches that were (i) dispensed pursuant to an illegal kickback scheme; (ii) pursuant to a pre-determined protocol without regard for medical necessity; (ii) in violation of New York State laws regarding the legal operation of pharmacies and dispensing of pharmaceuticals; and/or (iv) in violation of Federal regulations regarding the compounding of medications under the Pharmacy Fee Schedule.

224.     Because 21st Century Pharmacy has engaged in the conduct alleged herein, Plaintiff seeks a declaration that it is not required to pay any of 21st Century Pharmacy's claims for Compound Pain Creams and Pain Patches, including but not limited to those described in the Templated Prescription Forms, which were dispensed pursuant to the scheme to defraud alleged herein.

225.     Plaintiff has no adequate remedy at law.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

**WHEREFORE,** American Transit demands judgment as follows:

i)      Compensatory damages, the exact amount to be determined at trial, together with prejudgment interest;

ii)     Punitive damages in such amount as the Court deems just;

iii)    Treble damages, costs, and reasonable attorneys' fees on the First Claim For Relief, together with prejudgment interest;

iv)     Compensatory and punitive damages on the Second Claim for Relief, together with prejudgment interest;

v)      Compensatory damages on the Third Claim for Relief, together with prejudgment interest;

vi)     Declaratory relief on the Fourth Claim for Relief declaring that American Transit has no obligation to pay any of Defendants' unpaid claims for Compound Pain Creams and Pain Patches, whether pending, previously-denied and/or submitted, regardless of whether such unpaid claims were ever denied;

vii)    Costs, reasonable attorneys' fees, and such other relief that the Court deems just and proper.

Dated: New York, New York,
September 2, 2022

Morrison Mahoney LLP

By:_____/s/ Lee Pinzow_____
Robert A. Stern, Esq.
James McKenney, Esq.
Karina Trost, Esq.
Lee Pinzow, Esq.
*Attorneys for Plaintiff American
Transit Insurance Company*
Wall Street Plaza
88 Pine Street, Suite 1900
New York, New York 10005
(212) 825-1212

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

AMERICAN TRANSIT INSURANCE COMPANY,

                                  **Plaintiff,**

        -against-

21ST CENTURY PHARMACY INC. AND ALBERT ALISHAYEV,

                              **Defendants.**

CIVIL ACTION

22-CV-5255

COMPLAINT

(TRIAL BY JURY DEMANDED)

---

# COMPLAINT

---

**MORRISON MAHONEY, LLP**
**ATTORNEYS FOR PLAINTIFF**
**WALL STREET PLAZA**
**88 PINE STREET, SUITE 1900**
**NEW YORK, NEW YORK 10005**
**TELEPHONE:  (212) 825-1212**